**SO ORDERED.**

**SIGNED January 31, 2012.**



_____
ROBERT SUMMERHAYS
UNITED STATES BANKRUPTCY JUDGE
_____

```
         UNITED STATES BANKRUPTCY COURT
         WESTERN DISTRICT OF LOUISIANA
              ALEXANDRIA DIVISION

IN RE:

CENTRAL LOUISIANA GRAIN
COOPERATIVE, INC.,                    CASE NO. 08-80475

     Debtor
-----------------------------------------------------------
THOMAS R. WILLSON,
CHAPTER 7 TRUSTEE
PLAINTIFF

VERSUS                                ADVERSARY NO. 10-08009

JESS VANDERLICK, ET AL
DEFENDANTS
-----------------------------------------------------------
                    MEMORANDUM RULING
-----------------------------------------------------------
```

In the present adversary proceeding, Thomas R. Willson, the duly-appointed Chapter 7 Trustee (the "Trustee") of Central Louisiana Grain Cooperative, Inc. (the "Debtor"), asserts claims against ten (10) former members of the Debtor's board of directors. The Trustee's original complaint for damages (the "Complaint")

alleges that these defendants breached their fiduciary duties to the Debtor, failed to exercise adequate oversight and control, and failed to maintain adequate records. (Complaint at ¶¶ 16-28.) In addition to the former directors, the Trustee asserts a direct claim against Admiral Insurance Company ("Admiral"). The Trustee alleges that Admiral issued a Nonprofit Management Liability Insurance Policy (the "Admiral D & O Policy") that covers the losses alleged in the Complaint. The Trustee names Admiral as a defendant pursuant to the Louisiana Direct Action Statute. Admiral subsequently filed a Motion for Summary Judgment seeking dismissal of the claims against it on the grounds of the "insured versus insured" exclusion in the Admiral D & O Policy. After considering the parties' arguments, the summary judgment record, and the relevant authorities, the court DENIES the Motion for Summary Judgment for the reasons set forth below.

## JURISDICTION

This case has been referred to this court by the Standing Order of Reference entered in this district which is set forth as Rule 83.4.1 of the Local Rules of the United States District Court for the Western District of Louisiana. No party in interest has requested a withdrawal of the reference. The court finds that this is a core proceeding pursuant to 28 U.S.C. § 157(b)(2). These Reasons for Decision constitute the court's findings of fact and

conclusions of law pursuant to Rule 7052 of the Federal Rules of Bankruptcy Procedure.[1]

**BACKGROUND**

The Debtor filed for relief under Chapter 7 of the Bankruptcy Code on April 10, 2008, and the Trustee was subsequently appointed on May 7, 2008. The Debtor was a Louisiana agricultural cooperative association formed under La. R.S. 3:71 *et seq*. On April 10, 2010, the Trustee commenced the present adversary proceeding against fourteen (14) defendants. Ten (10) of the defendants – Jess Vanderlick, Vernon Mathews, John Dean, Louis Gatlin, Lloyd Puckett, Ben Littlepage, Charles Matt, John Deykeyser, Richard Hargis, and Gordon Smith – were members of the Debtor's Board of Directors. Another defendant, Charles Vanderlick, Jr., was the General Manager of the Debtor. Defendant Mike Gillespie was the Debtor's accountant. Finally, the Trustee named the Debtor's two D & O insurance providers pursuant to the Louisiana Direct Action Statute: Admiral and Monitor Insurance Co. ("Monitor"). Monitor was subsequently dismissed as a defendant.

---

[1] After the hearing on this matter, the court held a telephone conference with the parties to discuss whether the Supreme Court's ruling in Stern v. Marshall, ___ U.S. ___, 131 S.Ct. 2594 (2011) precludes the court from entering final orders or judgments in this adversary proceeding. Subsequently, the parties consented to the court entering final orders or judgments in this proceeding. (See Joint Stipulation [Dkt. No. 128] and Statement on Behalf of Admiral [Dkt. No. 127].) In light of 28 U.S.C. § 157(c), the court concludes that this stipulation is sufficient to allow the court to enter final orders under Stern.

-3-

The focus of Admiral's Motion for Summary Judgment is whether the Admiral D&O Policy covers the claims asserted in the Complaint. The policy provides that it will "pay on behalf of the Insureds all Loss arising from any Claim first made against the Insureds during the Policy Period and reported to the Insurer in writing during the Policy Period or within ninety days thereafter, for any Wrongful Act." (Ex. A to Trustee's Opposition Memorandum [Dkt. No. 100] at ¶ I.) The policy defines "Insured Person" as any "past, present or future duly elected or appointed directors, trustees, officers, employees (including part-time, seasonal and temporary individuals), volunteers, or committee or staff members of the Insured Entity...." (Id. at ¶ III(D).) The policy defines the Insured Entity as the Debtor and any of its subsidiaries. The Admiral D&O Policy also contains certain exclusions to this coverage. Exclusion F of the policy provides as follows:

> In addition to the Exclusions listed in section IV of the Common Policy Terms and Conditions Section, the Insurer shall not be liable to make any payment for Loss in connection with a Claim made against any Insured:
>
> ...
>
> F. **by, on behalf of, or in the right of the Insured Entity in any capacity**, provided, however, this exclusion does not apply to any Claim that is a derivative action brought or maintained on behalf of the Insured Entity, but only if such Claim is instigated and continued totally independent of, and totally with the solicitation of, or assistance of,

-4-

or participation of, or intervention of any Insured.

(Id. at ¶ IV(F).) (Emphasis added). Admiral subsequently filed the present Motion for Summary Judgment arguing that, as a matter of law, Exclusion F of the policy precludes coverage for the claims asserted by the Trustee. Specifically, Admiral argues that the claims brought by the Trustee against the insured director defendants are claims brought "by, on behalf of, or in the right of the Insured Entity in any capacity."

**DISCUSSION**

**A. Summary Judgment Standard**

Summary judgment is proper if the pleadings, discovery products on file, and affidavits show that there are no genuine issues of material fact and that the movant is entitled to judgment as a matter of law. See Fed. R. Civ. P 56. The purpose of summary judgment is to pierce the pleadings and to assess the proof to determine whether there is a genuine need for trial. See Matsushita Electric Industries v. Zenith Radio Corp. 475 U.S. 574, 587 (1986). Summary judgment procedure is designed to isolate and dispose of factually unsupported claims or defenses. Celetex Corp. v. Catrett, 477 U.S. 317, 323-24 (1986). Where, as here, the movant does not bear the burden of persuasion, the movant may satisfy its summary judgment burden by pointing to an absence of

-5-

evidence supporting an essential element of the non-moving party's claim. Celetex Corp., 477 U.S. at 324-326 (absence of support for an essential element of the plaintiff's claim entitles the defendant to summary judgment unless in response the plaintiff non-movant sets forth facts that permit a reasonable trier of fact to find for the plaintiff on that essential element of his claim). Assuming that the movant has met this burden, the non-movant plaintiff must come forward with "substantial evidence" supporting the essential elements challenged in the motion for summary judgment. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986). In other words, the evidence must be sufficient to withstand a motion for directed verdict and to support the verdict of a reasonable jury. Id. Under this standard, the non-movant cannot rely on unsupported assertions or arguments, but must submit sufficiently probative evidence supporting the essential elements of its claims challenged in the motion for summary judgment.

**B.  The Applicable Standards For Interpreting Insurance Contracts.**

Admiral's motion requires the court to construe the language of Exclusion F of the Admiral D & O Policy. When dealing with matters of contract construction, federal courts generally look to state law. In Louisiana, insurance policies are construed using the general rules of contract interpretation set forth in the Louisiana Civil Code. See Innovative Hospitality Systems, LLC v.

-6-

Abraham, 61 So.3d 740, 743 (La. App. 3d Cir. 2011); Muller v. Colony Insurance Co., 57 S. 3d 341, 346 (La. App. 1st Cir. 2010) ("An insurance contract or policy is a conventional obligation that constitutes the law between the parties to the contract, the insured and the insurer.") If the language of the policy is clear and unambiguous, the policy must be enforced as written. Muller, 57 So.3d at 346. However, "a provision which seeks to narrow the insurer's obligation is strictly construed against the insurer, and, if the language of the exclusion is subject to two or more reasonable interpretations, the interpretation which favors coverage must be applied." Innovative Hospitality Systems, 61 So. 3d at 743.

**C.   Judicial Treatment of The "Insured Versus Insured" Exclusion.**

Section F of the Admiral D&O Insurance Policy is what is commonly called the "insured versus insured" exclusion. Public companies typically provide D & O insurance coverage to their officers and directors to protect against the risk of liability arising from actions taken in their official capacities on behalf of the corporation. See, eg., Bart Schwartz & Amy Goodman, Corporate Governance: Law and Practice § 5.04 [2] (Mathew Bender 2005). These policies generally cover derivative and direct claims by shareholders as well as claims by a corporation's creditors, employees, suppliers, and other third parties. Id. One of the

-7-

typical exclusions to such policies is the insured versus insured exclusion. Like Exclusion F in the Admiral D & O Policy, these provisions generally exclude coverage for claims by one insured (typically the corporation who procured the policy) against another insured (typically the corporate director or officer covered by the policy). The purpose of the exclusion is to avoid collusive claims by insured corporations "trying to recoup corporate losses by attributing them to the wrongdoing of directors and officers who, if insured, have nothing to lose by taking the blame." Narath v. Executive Risk Indemnity, Inc., 2002 WL 924231 at *5 (D. Mass. March 14, 2002); In re Molten Metal Technology, Inc., 271 B.R. 711, 728 (Bankr. D. Mass. 2002).

While the application of this exclusion may be straightforward when claims are brought by the insured corporation, its application is less clear in the bankruptcy context when claims are brought by a debtor-in-possession, plan committee, or trustee. In many bankruptcy cases, a trustee or liquidating trust will bring claims against the debtor's former officers and directors seeking to recover for alleged breaches of fiduciary duty or mismanagement prior to the bankruptcy filing. The question for courts in these cases is whether the trustee's claims are brought by or on behalf of the insured company and thus are subject to the insured versus insured exclusion. Courts addressing this question in the context

-8-

of claims brought by a debtor-in-possession or a plan committee are split. Many courts have held that there is a sufficient identity between the pre-petition debtor and the post-petition debtor-in-possession or plan committee/trust that such claims fall within the exclusion. See, e.g., Reliance Ins. Co. of Illinois v. Weis, 148 B.R. 575 (E.D. Mo. 1992) (holding that action by plan committee against the debtor's former officers and directors was subject to the insured versus insured exclusion); Stratton v. National Union Fire Ins. Co., 2004 WL 1950337 at *5 (D. Mass Sept. 3, 2004) (claims brought by successor entity created under the plan were subject to the exclusion); R. J. Reynolds - Patrick County Memorial Hospital v. Federal Ins. Co., 315 B.R. 674, 679 (Bankr. W.D. Va. 2003) (claims by liquidating trust and debtor-in-possession subject to the exclusion); but see Cox Communications, Inc. v. National Union Fire Ins. Co., 708 F. Supp. 2d 1322, 1330 (N.D. Ga. 2010) (claims by bondholders' committee not subject to the exclusion). Some cases involving debtors-in-possession rely on case law holding that the debtor-in-possession is essentially the same entity as the pre-petition debtor. See R. J. Reynolds - Patrick County Memorial Hospital, 315 B.R. at 680 (citing N.L.R.B. v. Bildisco & Bildisco, 465 U.S. 513 (1984)). Other courts generally hold that a debtor-in-possession or plan committee/trust merely steps into the shoes of the pre-petition debtor for purposes

-9-

of the insured versus insured exclusion. See Reliance Ins. Co. of Illinois, 148 B.R. at 582; R. J. Reynolds - Patrick County Memorial Hospital, 315 B.R. at 678. These decisions hold that, as the successor to the pre-petition debtor, a debtor-in-possession or plan committee/trust should be treated as the insured debtor for purposes of the insured versus insured exclusion. See Stratton, 2004 WL 1950337 at *5.

In contrast, many courts have declined to apply the exclusion in cases where claims are brought by a duly appointed Chapter 11 or Chapter 7 trustee. See, eq., In re County Seat Stores, Inc., 280 BR 319, 327 (Bankr. S.D.N.Y. 2002) (claims brought by Chapter 11 trustee not subject to insured versus insured exclusion); Alstrin v. St. Paul Mercury Ins. Co., 179 F.Supp. 2d 376 (Del. 2002) (same); In re Pintlar Corp., 205 BR 945 (Bankr. Idaho 1997)(same); In re Molten Metal Technology, 271 BR 711 (Bankr. D. Mass. 2002)(same); In re Buckeye Countrymark, Inc., 251 BR 835 (Bankr. S.D. Ohio 2000)(same); In re Laminate Kingdom, LLC d/b/a Floors Today, 2008 WL 704396 at *3 (Bankr. S.D. Fla. March 13, 2008) (claims by bankruptcy trustee against a former manager of the debtor were not subject to the insured versus insured exclusion). These courts rely on several factors in holding that the exclusion does not apply to claims brought by a trustee. First, these courts generally conclude that the Chapter 11 or Chapter 7 trustee is

-10-

separate and distinct from the insured debtor.  See In re County Seat Stores, Inc., 280 BR at 325 ("A bankruptcy trustee is a legal entity separate and distinct from the debtor.")  These courts also rely on the fact that the trustee owes his or her duties not to the debtor, but to the bankruptcy estate and "the entire community of interests" of the debtor.  Id. (quoting Pepper v. Litton, 308 U.S. 295 (1939)); Narath, 2002 WL 924231 at *2 (claims by Chapter 11 trustee not subject to exclusion because, unlike claims by the pre-petition debtor, claims by the trustee were for "the purpose of retrieving and liquidating assets for the benefit of creditors and potentially, shareholders" and that the trustee was adverse to the defendants); Molten Metal Technology, 271 B.R. at 729 (the trustee and debtor have "different powers and rights and...being separate and distinct entities...[have] different interests.").  Some courts also reason that a bankruptcy trustee is sufficiently adverse to the officer and director defendants that claims brought by the trustee do not raise the specter of collusion that otherwise might arise if the claims are brought by the insured corporation.  See, eg., Narath, 2002 WL 924231 at *2 (reasoning that the underlying purpose for the insured versus insured exclusion did not apply to claims brought by a Chapter 11 trustee because "the parties are adverse, and the purpose of the exclusion – to prevent collusion between insured parties – is defeated.")  See also County Seat

-11-

Stores, Inc., 280 B.R. at 329 (noting that a trustee "as a truly adverse party, does not, or should not, raise concerns of collusion because the trustee does not represent the interest of any party that could be a participant of a conspiracy to collude.").[2]

---

[2] Courts have also grappled with the scope of the insured versus insured exclusion outside of the bankruptcy context. For example, courts have addressed the scope of the exclusion in cases where the FDIC or FSLIC has brought claims against the former management of a failed financial institution. As in the bankruptcy context, these cases address whether the insured versus insured exclusion applies to claims brought by regulators based on damages suffered by a failed financial institution as a result of actions by its former management. As in the bankruptcy context, court decisions have diverged over the extent to which claims by the FDIC or FSLIC fall within this exclusion. Compare Mt. Hawley Ins. Co. v. Federal Savings & Loan Ins. Corp., 695 F.Supp. 469, 483-84 (C.D. Cal. 1987) (claims brought by FSLIC against former officers and directors of a failed savings and loan were not covered under the insured versus insured exclusion to a D & O policy because the FSLIC merely steps into the shoes of the failed bank and "becomes to all intents and purposes the bank..."), with FDIC v. National Union Fire Ins. Co., 630 F.Supp. 1149, 1156 (W.D. La. 1986) (noting that the FDIC "does not simply stand in the shoes of its predecessor bank"). The cases holding that the exclusion applies to such claims typically involve actions where the FDIC or FSLIC is acting in its corporate capacity and is not acting for the benefit of a failed institution's creditors and depositors. See, eg., Mt. Hawley Ins. Co., 695 F.Supp. at 482 (noting that the FSLIC was acting solely in its corporate capacity: "When the FSLIC later sues the officers and directors in that situation, it does so on its own behalf in its corporate capacity.") These cases are distinguishable from the cases addressing the exclusion in the bankruptcy context when the claims at issue are asserted by a trustee charged with duties to the bankruptcy estate and "the entire community of interests" of the debtor.

-12-

**D. Does The Insured Versus Insured Exclusion Bar Coverage With Respect to The Trustee's Claims?**

Turning to the present case, the scope of the insured versus insured exclusion in the Admiral D & O Policy is governed by the language of that exclusion. Exclusion F of that policy precludes coverage for claims "by, on behalf of, or in the right of the Insured Entity in any capacity." The policy defines "Insured Entity" as "Central Louisiana Grain Cooperative, Inc." and its subsidiaries. Exclusion F applies to the claims in the present case only if the Trustee can be deemed the "Insured Entity." The court agrees with the reasoning of the courts in County Seat Stores, Inc., Molten Metal Technology, and Laminate Kingdom that a duly appointed bankruptcy trustee is not the insured debtor for purposes of the insured versus insured exclusion. Specifically, once Central Louisiana Grain Cooperative, Inc. filed for relief under Chapter 7 of the Bankruptcy Code, all of its claims against its former officers and directors flowed into the bankruptcy estate. This estate and the Chapter 7 trustee appointed to administer the estate are separate and distinct entities from the pre-petition debtor. See Molten Metal Technology, 271 BR at 726 ("upon the debtor's filing of its bankruptcy petition...the claims became the property of a **new entity**, the bankruptcy estate.") (emphasis added); see also In re Int. Gold Bullion Exchange, Inc.,

-13-

60 B.R. 261, 263 (Bankr. S.D. Fla. 1986) ("...a trustee, like a debtor-in-possession, is conceptually separate for purposes of bankruptcy law...") The Trustee's duties and role in this case differs from that of the insured debtor in that he is bound by the duties set forth in 11 U.S.C. Section 704(a) "to collect and reduce to money the property of the estate for the benefit of the debtor's creditors." Laminate Kingdom, 2008 WL 704396 at *4. Id.; Narath, 2002 WL 924231 at *2. In discharging these duties, the Trustee does not act on behalf of or for the benefit of the defunct debtor. Laminate Kingdom, 2008 WL 704396 at *4. Accordingly, the claims brought by the Trustee are not claims brought "by" the Insured Entity because the Trustee is a distinct legal entity with different duties and functions, and the language of the exclusion does not sweep the Trustee into the definition of "Insured Entity." Nor are they claims brought "on behalf" of the Insured Entity because, under section 704(a), the Trustee administers the estate (which includes the claims asserted in this case) "for the benefit of the debtor's creditors," not the defunct debtor. Id.

Even in R. J. Reynolds - Patrick County Memorial Hospital and similar decisions holding that the insured versus insured exclusion applies to debtors-in-possession and plan committees/trusts, the courts distinguished those cases from cases where, as here, the claims are brought by a duly appointed Chapter 11 or 7 trustee.

-14-

315 B.R. at 679-82. In R. J. Reynolds - Patrick County Memorial Hospital, the court observed that the exclusion would likely not apply to claims brought by a bankruptcy trustee because, while a "pre-petition debtor is the same entity as a debtor-in-possession," a "debtor-in-possession is not the same entity as the Chapter 11 trustee." The court also noted that a plan committee or liquidating trust is different from a court-appointed trustee in that the claims asserted by a plan committee/trust result from the "voluntary assignment, through the Plan" of the claims, while the appointment of a trustee" is almost always effected in contravention of the wishes of a debtor." Id. In other words, claims brought by a Chapter 11 or 7 trustee do not typically raise any danger of collusion. Accordingly, "[b]ecause a chapter 11 debtor-in-possession is different than a chapter 11 trustee that is appointed by the court, claims by a debtor-in-possession, or its assignee, against a director or officer might possibly be precluded by an [insured versus insured exclusion] while the same action against the same director or officer brought by a chapter 11 trustee in the same case might not be excluded by [the] clause." Id.; see also Stratton, 2004 WL 1950337 at *5 (distinguishing cases where claims are brought by a trustee because "[a]ny proceeds in these claims were to be paid directly to creditors, making the trustee a genuinely adverse party.") In contrast, one of the

-15-

primary cases cited by Admiral, <u>National Union Fire Ins. Co. v. Olympia Holding Corp</u>., 1996 WL 33415761 at *7 (N.D. Ga. 1996), is not so readily distinguishable because the plaintiff in that case was a Chapter 7 trustee.  The court, however, does not find the <u>Olympia Holding</u> case persuasive because that case fails to assess or even acknowledge the case law recognizing the legal distinction between a bankruptcy trustee and the defunct Chapter 7 debtor.  Nor does the <u>Olympia Holding</u> court acknowledge the trustee's duties under the Bankruptcy Code.  Instead, the <u>Olympia Holding</u> court merely concludes that " for purposes of this litigation, there is no legal distinction between [the insured company] and ...[the] Trustee for the bankruptcy estate." <u>Id</u>.  Accordingly, the court rejects <u>Olympia Holdings</u> as grounds to grant Admiral's Motion for Summary Judgment.

Admiral further argues that the <u>Molten Metal Technology</u> line of cases is inapplicable to the present case because, in contrast to the exclusion at issue in those cases, the Admiral D & O Policy also excludes claims brought "***in the right of*** the Insured Entity." The court disagrees.  First, the policy in <u>Laminate Kingdom</u> included this "in the right of" language, and the court nevertheless ruled that the exclusion was inapplicable because the trustee was asserting claims on behalf of the debtor's creditors, not the debtor.  More importantly, Admiral's argument fails because

-16-

the "Insured Entity" in this case – Central Louisiana Grain Cooperative – had no rights to or ownership interest in any of the claims asserted by the Trustee. Rather, all the Debtor's rights with respect to these claims(along with all other estate property under 11 U.S.C. § 541) vested in the bankruptcy estate upon the filing of the petition. Cox Communications, Inc., 708 F. Supp. 2d at 1330 (the exclusion does not apply to bondholders' committee, because the committee "simply enforce[s] a right belonging to" the bankruptcy estate); In re General Growth Properties, Inc., 426 B.R. 71, 76 (Bankr. S.D.N.Y. 2010) ("As claims of the bankruptcy estate, only the trustee can bring them and [plaintiff] no longer owns them nor can [plaintiff] assert them."); Molten Metal, 271 B.R. at 729 (trustee was not prosecuting claims on behalf of the debtor because "[u]pon the Debtor's bankruptcy filing, the claims at issue became assets of the bankruptcy estate,...which is a separate entity from the Debtor.") Accordingly, the Trustee is not asserting these claims "in the right of the Insured Entity," but in the right of the *bankruptcy estate*. To the extent that Admiral's argument is that this "in the right of" language extends the exclusion to claims brought by *successors*, the applicable authorities and the plain language of the policy's definitions and exclusion do not support Admiral's argument. First, the Molten Metal and Laminate Kingdom line of cases hold that a bankruptcy trustee is not merely

-17-

a successor to the insured debtor. See, e.g. County Seat Stores, 280 B.R. at 326 (observing that the trustee does not strictly "stand in the shoes" of the debtor). Moreover, the policy does not define "Insured Entity" to include successors, nor does Admiral point to any authority construing this "in the right of" language to apply to successors. As Laminate Kingdom noted, if Admiral had intended to include successors or bankruptcy trustees in the exclusion, it could have included language clearly expressing its intent. Laminate Kingdom, 2008 WL 704396 at *5 ("If Carolina Casualty wanted to include the bankruptcy trustee, it could have expressly provided so by plainly excluding claims brought by the 'Insured Entity's trustee in bankruptcy.'") In sum, the court concludes that Admiral has not met its burden of establishing, as a matter of law, that the insured versus insured exclusion in Exclusion F of the Admiral D & O policy bars coverage for claims brought by the Trustee in this case. This result is consistent with the express language of the policy as well as the cases construing similar provisions in the bankruptcy context. It is also consistent with the underlying purpose of the insured versus insured exclusion to avoid collusive claims.

**E.   The Derivative Action Exception**.

The ten director defendants also oppose Admiral's Motion for Summary Judgment on the grounds that the "derivative action"

-18-

exception to the insured versus insured exclusion in Paragraph F of the policy applies to this case.  Given the court's conclusion that the exclusion does not apply on other grounds, the court need not further address this argument.  The court, however, notes that the derivative action exception likely would not apply to the claims brought by the Trustee because these claims are *direct* claims, not derivative claims brought by a creditor or shareholder of the Debtor.  See Torch Liquidating Trust v. Stockstill, 561 F.3d 377 (5th Cir. 2009) (breach of fiduciary duty claims brought by liquidating trustee were direct claims not derivative claims).

## CONCLUSION

For the reasons set forth herein, the court **DENIES** Admiral's Motion for Summary Judgment.  Admiral shall submit an order that reflects the court's ruling herein within 20 days.

**IT IS SO ORDERED.**


###